IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Latoyia Abrena Myers, | ) Civil Action No.: 5:15-cv-3494-BHH |
| Plaintiff, | ) |
| v. | ) **OPINION AND ORDER** |
| Nancy A. Berryhill, Commissioner of Social Security,[1] | ) |
| Defendant. | ) |

Plaintiff Latoyia Abrena Myers ("Plaintiff") brought this action pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of a final decision of Defendant Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, D.S.C., this matter was referred to United States Magistrate Judge Kaymani D. West, for pretrial handling. On December 13, 2016, the Magistrate Judge issued a Report and Recommendation ("Report" or "R&R") in which she determined that Plaintiff did not show that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. Accordingly, the Magistrate Judge recommended affirming the Commissioner's decision. (ECF No. 27.) Plaintiff filed Objections on December 28, 2016 (ECF No. 29), and on January 11, 2017, the Commissioner filed a Reply (ECF No. 32).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

For the reasons stated below, the Court adopts the Report and affirms the Commissioner's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

The Report and Recommendation sets forth in detail the relevant facts and standards of law on this matter, and the Court incorporates them and summarizes below in relevant part. Plaintiff was 30 years old on her amended alleged disability onset date of January 22, 2010. She completed one year of college and has past relevant work experience as a packer, cashier, and telephone collections agent.

On August 30, 2010, Plaintiff filed an application for DIB and SSI benefits alleging a disability since October 15, 2008.[2] A hearing was held before an Administrative Law Judge ("ALJ") who issued a partially favorable decision on August 14, 2012, finding Plaintiff was not disabled prior to March 6, 2012, but became disabled on that date and continued to be disabled through the date of his decision. The Appeals Council granted Plaintiff's request for review and vacated the ALJ's entire hearing decision, including the favorable portions. It remanded Plaintiff's case to the ALJ for further consideration of Plaintiff's earnings from 2011, consideration of Plaintiff's maximum RFC, and to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.

The ALJ conducted a second hearing on September 11, 2014, and issued an unfavorable decision on February 25, 2015, finding that Plaintiff has not been under a disability from January 22, 2010, through the date of his decision. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the

---

[2] Plaintiff later amended her alleged disability onset date to the date she last stopped working, January 22, 2010.

2

Commissioner. Plaintiff subsequently filed an action in this Court on September 1, 2015. (ECF No. 1.)

## REPORT AND RECOMMENDATION

The Magistrate Judge recommends affirming the ALJ's decision. The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). "However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the Magistrate Judge as to those portions of the report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case the Court is free, after review, to accept, reject, or modify any of the Magistrate Judge's findings or recommendations." *Wallace v. Housing Auth. of the City of Columbia*, 791 F. Supp. 137, 138 (D.S.C. 1992) (internal citations omitted).

## STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Under 42 U.S.C. § 405(g), the Court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g) ("The findings of the

3

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964); *see, e.g., Daniel v. Gardner*, 404 F.2d 889 (4th Cir. 1968); *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966); *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976). In order for a reviewing court to determine whether the Commissioner based a decision on substantial evidence, "the decision must include the reasons for the determination . . . ." *Green v. Chater*, 64 F.3d 657, 1995 WL 478032, *2 (4th Cir. 1995) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). The statutorily mandated standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *See, e.g., Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299 (4th Cir. 1968). Accordingly, "the court [must] uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). As noted by Judge Sobeloff in *Flack v. Cohen*, 413 F.2d 278 (4th Cir. 1969), "[f]rom this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Id.* at 279. "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## **DISCUSSION**

Plaintiff filed objections to the Report and Recommendation on December 28, 2016 (ECF No. 29), and the Commissioner filed a reply on January 11, 2017 (ECF No. 32). Plaintiff objects to the Magistrate Judge's recommendation concerning the ALJ's alleged failure: 1) to consider whether the work performed by Plaintiff in 2011 and 2012 was done under special conditions as defined by 20 C.F.R. § 404.1573; 2) to consider whether any of the work performed by Plaintiff in 2011 constituted an unsuccessful work attempt as defined by 20 C.F.R. § 404.1574(c) and SSR 05-02; and 3) to consider all relevant evidence of record, including opinion evidence provided by two of Plaintiff's treating physicians. (ECF No. 29.) [3]

### A.     Special Conditions under 20 C.F.R. § 404.1573

Plaintiff first argues that the ALJ failed to consider whether the work performed by Plaintiff in 2011 and 2012 was done under special conditions as defined by 20 C.F.R. § 404.1573.

Pursuant to 20 CFR § 404.1574, "[t]he amount of ... [a claimant's] earnings from work . . . [a claimant has] done . . . may show that . . . [the claimant has] engaged in substantial gainful activity ["SGA"]." 20 CFR § 404.1574. Thus, "[t]he regulations provide a presumption that if an individual is earning at or above the substantial gainful activity dollar amount, such work would "ordinarily show that [she has] engaged in substantial gainful activity." *Miller v. Astrue*, 2011 WL 5526196, *3 (D.S.C. Oct. 24, 2011) (quoting 20 C.F.R. § 404.1574) (brackets in original), *adopted by*, 2011 WL 5526027 (D.S.C. November 14, 2011). However, the income guidelines of section 404.1574(b)(2) do not

---

[3] As always, the Court says only what is necessary to address such arguments against the already meaningful backdrop of a thorough Report of the Magistrate Judge, incorporated entirely by specific reference, herein, to the degree not inconsistent. Exhaustive recitation of law and fact exists there.

5

automatically disqualify a disability claim. On the contrary, "[t]his presumption of substantial gainful activity is not to be rigidly applied, and it may be rebutted." *Payne v. Sullivan*, 946 F.2d. 1081, 1083 (4th Cir. 1991). Section 404.1573 requires an ALJ to consider other factors such as the nature of her work, how well she performs her work, if her work is done under special conditions, if she is self-employed, and the time spent in work. 20 C.F.R. § 404.1573; *see also Payne*, 946 F.2d at 1083 (stating that factors for consideration include "the nature of his work and his ability to do that work, including his endurance, his capacity to perform various physical functions, and his work schedule").

In his decision, the ALJ noted that Plaintiff earned $13,303 in 2011 and $13,246 in 2012, and found that both sums exceeded the SGA amount. (Tr. 21.) He further determined the following:

> Although the claimant alleges, through her representative, that the Appeals Council Decision/Order took note that the claimant had a special arrangement with her employer, no evidence of this was seen in the Appeals Council Order dated December 27, 2013. While the claimant has testified that she was allowed special work accommodations, she has submitted nothing from her employer indicating that any allowances were made and, in fact, she has continued to work since January 1, 2013. Thus, I find that the work performed from January 1, 2011 to December 31, 2012 constitutes substantial gainful activity.

(Tr. 21.)

Plaintiff asserts that the ALJ failed to consider whether Plaintiff's work during the time at issue was performed under special conditions. (ECF No. 29 at 3.) In support, she cites *Summers v. Colvin*, No. 1:13-2546-BHH, 2014 WL 5312896, at *13 (D.S.C. Oct. 16, 2014). In *Summers*, this Court found the ALJ erred in its finding that the plaintiff engaged in SGA because the record contained evidence suggesting that the plaintiff's

6

prior work was in a sheltered or special environment and the ALJ "only considered the amount of [p]laintiff's earnings and ignored the provisions in 20 C.F.R. § 404 .1574(b), which required that he consider whether [p]laintiff's wages were being subsidized." 2014 WL 5312896, at *14. The Court relied on another district court opinion, *Miller v Astrue,* to find that such facts warranted remand. In *Miller*, the court found that remand was appropriate where the plaintiff presented evidence to suggest that she was working under special conditions and the ALJ's opinion found that the plaintiff engaged in SGA, but did not indicate that she considered whether the plaintiff was working under special conditions. 2011 WL 5526196 at *4.

Upon review, the Court finds both *Summers* and *Miller* inapplicable to the instant matter. Unlike in the cited cases, the ALJ here expressly considered whether Plaintiff was working under special conditions. (Tr. 21.) He referenced her testimony that "she was allowed special work accommodations" and explained his reasons for rejecting this testimony, including the fact that she had failed to present documentation from her employer indicating that any allowances were made. (Tr. 21.) Further, as noted by the Magistrate Judge, the record before the ALJ included a Work Activity Questionnaire completed by U-Haul in October 2012. This Questionnaire states, *inter alia*, that: 1) Plaintiff was able to complete all the job duties without special assistance; 2) Plaintiff did not receive any special assistance; and 3) Plaintiff's productivity rate was 100% of other employees' productivity in similar positions. (Tr. 377-79.) Thus, there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's work in 2011 and 2012, which met the SGA income requirements, constituted SGA. This objection is therefore overruled.

7

### B.     Unsuccessful Work Attempt

Plaintiff next argues that the ALJ failed to consider whether her work in 2011 constituted an unsuccessful work attempt. In her objection, Plaintiff correctly notes that a disability applicant's prior work will, in certain circumstances, be considered an unsuccessful work attempt "if, after working for a period of 3 months or less, [the claimant's] impairment forced [the claimant] to stop working or to reduce the amount of work [the claimant does] so that [the claimant's] earnings from such work fall below the substantial gainful activity earnings level . . . ." *See* 20 C.F.R. § 404.1574(c). To satisfy this burden, the pertinent regulations required Plaintiff to show both that her work was terminated (or her wages reduced to a sufficiently low level) due to her impairment or the removal of special impairment-related conditions and that: (1) she was frequently absent from work because of her impairment; (2) her work was unsatisfactory because of her impairment; (3) she worked during a period of temporary remission of her impairment; or (4) she worked under special conditions that were essential to her performance and these conditions were removed. 20 C.F.R. § 404.1574(c)(4)(i)-(iv).[4]

SSR 05-02 further clarifies the policy regarding unsuccessful work attempts and provides:

> There must be a significant break in the continuity of your work before you can be considered to have begun a work attempt that later proved unsuccessful. Such an interruption would occur when, because of your impairment or the removal of special conditions related to your impairment that are essential to your further performance of the work, the work was discontinued or reduced (or limited) to the non-SGA level. Such an interruption could also occur when, before the onset of your impairment, you discontinued (or limited) your work for other reasons, such as retirement, or never engaged in work activity. We will consider your work

---

[4] These cited regulations were revised effective November 16, 2016. See 81 Fed. Reg. 71369. However, the prior version as set forth above was the operative language of the regulation in effect at the time of Plaintiff's hearing and the ALJ's decision.

> to be "discontinued" if you (1) were out of work for at least 30 consecutive days or (2) were forced to change to another type of work or another employer.

2005 WL 568616 at *2.

At the second ALJ hearing, Plaintiff testified that in 2010 and 2011 she was employed by a temp agency and worked jobs lasting three months or less. (Tr. 72–73.) She stated she stopped those jobs because she "was unable to perform and attendance went to [her] medical issues." (Tr. 72.) When her attorney asked her to clarify, she confirmed she left these jobs because of "health reasons." (Tr. 73.) The ALJ later expressly confirmed with Plaintiff that she had jobs in 2011 "[t]hrough temp services" that "were three months or less." (Tr. 80.) Plaintiff told the ALJ that during that time she worked for U-Haul, as well as in a warehouse and in a job where she "[f]old[ed] clothes." (Tr. 81.) She testified that she worked full time in each job "for as long as the assignment was." (Tr. 81.)

The Magistrate Judge noted here that Plaintiff had presented no evidence to substantiate her claim that "her impairments were the reason for her leaving a particular job assignment" in 2011. (ECF No. 27 at 16.) She further noted that Plaintiff did not provide any evidence of a significant break in continuity of work whereby the ALJ could consider her work discontinued as set forth in SSR 05-02. Plaintiff objects that the Magistrate Judge's analysis here constituted "an impermissible finding of fact outside the scope of this court's review." (ECF No. 29 at 5.) The Court finds this argument unavailing, as the record makes clear the ALJ considered certain evidence regarding Plaintiff's employment in 2011, namely, Plaintiff's testimony at the ALJ hearing.

9

The testimony elicited by the ALJ at the hearing provided substantial evidence to find that Plaintiff's temporary work in 2011 did not constitute an unsuccessful work attempt. The fact that Plaintiff was working for a temp agency in 2011 indicates that the very nature of her work at that time was temporary. Thus, there were grounds for the ALJ to find that her jobs in 2011 ended by nature of her employment at a temp agency, rather than for any health reason. Further, Plaintiff testified that she worked at least three different types of jobs during that time, indicating that there was not a significant break in the continuity of her work in 2011. *See* SSR 05-02, 2005 WL 568616. Although the ALJ did not engage in an express analysis of this evidence in his decision, his questions and commentary at the hearing indicate that he considered this evidence in ultimately finding that Plaintiff engaged in SGA in 2011. *Mellon v. Astrue*, No. 4:08–2110–MBS, 2009 WL 2777653, at *13 (D.S.C. Aug. 31, 2009) (unpublished) ("[I]t is widely held that ALJs are not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to realize that all relevant evidence was considered, though not written about, in reaching the ultimate decision."). Thus, the Court finds the ALJ did not err in this respect and overrules Plaintiff's objection.

### C.     Consideration of Opinion Evidence for RFC Assessment

Finally, Plaintiff argues that the ALJ failed to consider all relevant evidence of record, including opinion evidence provided by two of Plaintiff's treating physicians, Dr. Steven Poletti and Dr. Amy Gardner. Specifically, she argues that the Magistrate Judge erred in finding it proper for the ALJ to ignore the opinions of two treating specialists because they were rendered prior to January 2013, during the period Plaintiff was

engaged in SGA. She contends such reasoning is improper given that the ALJ "inconsistently relied on the 2010 and 2011 opinions of non-examining state agency medical consultants to support his denial [of] Plaintiff's claim." (ECF No. 29 at 7.)

Contrary to Plaintiff's assertion, the Magistrate Judge did not solely rely on the time period in which the treating specialists' opinions were rendered to find that it was not in error for the ALJ to fail to expressly consider them. The Magistrate Judge first discussed the opinion of Dr. Steven Poletti relating to Plaintiff's functional limitations. Specifically, Dr. Poletti issued a function report on July 11, 2012, responding to Plaintiff counsel's request for updated information. The question posed from counsel was: "Based upon the results of [Plaintiff's] recent MRI and the medical findings from her clinical examinations, do you agree with the assessment of Dr. Alan Faulk regarding my client's functional limitations as expressed in the attached questionnaire he completed on April 30, 2012?" (Tr. 954.) Dr. Poletti checked the box labeled "Yes." (Tr. 954.)

The Magistrate noted that the ALJ considered Dr. Poletti's opinion in his 2012 hearing decision and quoted part of the ALJ's first written decision:

> Additionally, I have considered the opinion of Dr. Steven Poletti, who checked that he was in agreement with Dr. Faulk's questionnaire. This opinion has been considered, but has been given little weight prior to the amended onset date of disability, as the claimant did not seek any treatment from Dr. Poletti until May 2012, and his opinion is not consistent with the medical evidence.

(ECF No. 27 at 22; Tr. 115.) The Magistrate Judge then engaged in the following analysis:

> As correctly argued by Plaintiff, the ALJ did not include that finding in his 2015 hearing decision, but based on the period under consideration, the undersigned recommends a finding that Dr. Poletti's opinion is not material to the ALJ's disability determination. Also, the undersigned finds that while the ALJ did not address Dr. Poletti's opinion, he did consider the opinion

11

> upon which it relied—the opinion of Dr. Faulk. The ALJ noted that "at the time Dr. Faulk completed this questionnaire, the claimant was working at the substantial gainful activity level. As such, and as this assessment is inconsistent with findings from January 1, 2013 to the present, I have given this assessment little weight." Tr. 23. Therefore, the undersigned recommends that any error of the ALJ in not considering Dr. Poletti's opinion be considered as harmless because it would not have changed the ALJ's RFC assessment or disability determination. See *Mickles v. Shalala*, 29 F.3d at 921 (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error.").

(ECF No. 27 at 22–23.)

As demonstrated above, the Magistrate Judge ultimately found that any error of the ALJ in not considering Dr. Poletti's opinion should be considered harmless because it would not have changed the ALJ's RFC assessment or disability determination. (*Id.*) She drew this conclusion *not only* from the fact that Dr. Poletti's opinion was rendered outside the time period expressly considered by the ALJ, but also because the ALJ expressly found that the medical opinion on which Dr. Poletti's opinion relied was inconsistent with the record. The Court agrees with the Magistrate Judge that the outcome would not have changed regardless of any error here.

The Magistrate Judge engaged in a similarly thoughtful analysis of the GAF scores assigned to Plaintiff by Dr. Amy Gardner. The Magistrate Judge exhaustively detailed Dr. Gardner's treatment of Plaintiff and the applicable law on GAF scores and the proper evaluation of mental impairments under 20 C.F.R. § 404.1520a and § 416.920a. (ECF No. 27 at 23–25.) She then recounted the ALJ's findings as to Plaintiff's anxiety and quoted his conclusions:

> In sum, in light of the claimant's complaints of pain, I have limited her to a reduced range of sedentary work, as set forth above. Additionally, due to the claimant's *previous complaints* of anxiety, I have limited the claimant to simple, repetitive, routine tasks with no ongoing interaction with the

12

> general public. However, due to the aforementioned inconsistencies, particularly the relatively benign physical *and mental* examinations and the extent of the claimant's daily activities, I cannot find the claimant's allegations that she is incapable of all work activity to be credible.

(*Id.* at 225–26 (quoting Tr. 23-24 (emphases added)).

The Magistrate Judge concluded that the ALJ did not err in failing to expressly consider Dr. Gardner's GAF scores, explaining:

> It is Plaintiff's burden to establish disability in Steps One through Four of the sequential evaluation. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). Plaintiff has not presented any argument that the ALJ's failure to consider Dr. Garner's GAF scores had an adverse impact on his RFC assessment—just that the ALJ's failure to address this evidence in his decision is a violation of the regulations. As noted above, the ALJ stated his findings would address the period beginning in 2013. Dr. Garner's assessments were made in the first quarter of 2011. As discussed in the section of this Report dealing with Plaintiff's claim that her work in 2011 should be considered an unsuccessful work attempt, Plaintiff's 2011 work history report indicates that in 2011 she worked the second, third, and fourth quarters of 2011. Tr. 505-06. Other records indicate that in 2011 Plaintiff earned enough to qualify her work as SGA. Tr. 411. Although the ALJ did not cite Plaintiff's GAF scores, his decision does address Plaintiff's anxiety diagnosis and shows the ALJ considered Plaintiff's mental impairments when developing his RFC assessment. Accordingly, the undersigned recommends a finding that the ALJ did not err in failing to explicitly address Plaintiff's GAF scores.

(ECF No. 27 at 26–27.)

As with Dr. Poletti, the Magistrate Judge did not base her conclusion that the ALJ did not err in failing to expressly consider the GAF scores solely on the fact that they were rendered outside the time period expressly considered by the ALJ. She noted that Plaintiff had failed to demonstrate how this alleged error would have changed the outcome and found that the ALJ had expressly considered Plaintiff's mental impairments when developing his RFC assessment. (ECF No. 27 at 26.) Finally, in a footnote, the Magistrate Judge also noted that Dr. Garner's treatment notes reflect that

13

Plaintiff's GAF score was lower when she was non-compliant with her prescribed medications. (*Id.* at 27 (citing Tr. 879–86).) The Magistrate Judge correctly noted the regulations provision that a claimant will not be found disabled where the claimant failed to follow the prescribed treatment without a good reason. (*Id.* (citing 20 C.F.R. § 404.1530(b); § 416.930(b)).) This analysis further supports the Magistrate Judge's finding that the ALJ did not err in failing to expressly consider the GAF scores and that such omission was harmless. *See Gordon v. Colvin*, No. CV 1:15-3736-BHH-SVH, 2016 WL 4578342, at *4 (D.S.C. Aug. 3, 2016), *adopted by*, 2016 WL 4555965 (D.S.C. Sept. 1, 2016) (finding that although the ALJ did not cite Plaintiff's GAF scores, the ALJ's general findings were consistent with the scores and any failure to cite particular GAF scores was harmless because the ALJ would have reached the same conclusion).

Given the above analysis, the Court finds no inconsistency in the ALJ's decision to grant significant weight to the opinions of non-examining state agency medical consultants because "they are generally supported by the weight of the other evidence of record." (Tr. 23.) Plaintiff's objection here is overruled.

Finally, the Court has considered the remainder of Plaintiff's arguments *de novo* and finds they either: (1) fail to allege how the outcome of the decision would have been different; (2) lack record support; (3) are duplicative exactly of arguments already raised and adequately addressed by the recommendation; or (4) rely on evidence that, even where true, does not affect the view of the evidence, relied upon by the ALJ, as substantial. The Court is satisfied that in all respects the ALJ's findings are based on substantial evidence.

## **CONCLUSION**

The Court has carefully reviewed the record, including the findings of the ALJ and Plaintiff's objections to the Report and Recommendation. The Court concurs in the recommendation of the Magistrate Judge that substantial evidence in the record supports the decision of the Commissioner and thus adopts the Report and Recommendation, incorporating it herein by reference to the extent it is consistent with this order. The decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

/s/Bruce Howe Hendricks
United States District Judge

March 30, 2017
Greenville, South Carolina